IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLUMBIA GAS TRANSMISSION,
LLC,

     *Plaintiff/Counter-Defendant*,

     v.

MANGIONE ENTERPRISES OF TURF
VALLEY, L.P.,

     *Defendant/Counter-Plaintiff.*

Civil Action No. ELH-13-0115
Civil Action No. ELH-13-2317

## MEMORANDUM OPINION

These cases arise from a years-long dispute between Columbia Gas Transmission, LLC

("Columbia") and Mangione Enterprises of Turf Valley, L.P. ("Mangione"). The dispute relates

to natural gas pipelines owned and maintained by Columbia, and which, pursuant to easements,

traverse property in Howard County, Maryland, owned by Mangione.

Columbia and Mangione have filed several suits against one another, including the two

above-captioned cases, which have been consolidated.[1]  On May 29, 2014, Mangione filed an

amended counter-complaint against Columbia (ECF 80, the "Amended Counter-Complaint" or

---

[1] Jurisdiction is based on diversity of citizenship.  *See* 28 U.S.C. § 1332.  Case ELH-13-115, captioned *Columbia Gas Transmission, LLC v. Mangione Enterprises of Turf Valley, L.P.*, was filed in this Court on January 10, 2013.  *See* ECF 1, case ELH-13-115.  Case ELH-13-2317, captioned *Mangione Enterprises of Turf Valley, L.P. v. Columbia Gas Transmission, LLC*, was originally filed in the Circuit Court for Howard County, Maryland, *see* ECF 2, case ELH-13-2317, but was removed to this Court on August 9, 2013.  *See* ECF 1, case ELH-13-2317.

Cases ELH-13-115 and ELH-13-2317 were consolidated pursuant to this Court's Consolidation Order of April 18, 2014 (ECF 73).  Columbia was designated as the plaintiff/counter-defendant, and Mangione was designated as the defendant/counter-plaintiff. *See id.* at 1.  Following consolidation, all documents are to be filed only in ELH-13-115, which was designated as the lead case.  *See id.*  Unless otherwise indicated, all ECF citations in this Memorandum Opinion pertain to ELH-13-115.

"Am. C-Compl."), raising claims for declaratory judgment (Count I); trespass (Count II); "Breach of Contract - Easement" (Count III); negligence (Count IV); negligent misrepresentation (Count V); "Breach of Contract - MOU," pertaining to a memorandum of understanding (Count VI); and "Inverse Condemnation" (Count VII).[2]  Mangione seeks, *inter alia*, declaratory relief, damages, costs, and attorneys' fees.

Thereafter, Columbia filed a "Partial Motion to Dismiss Mangione Enterprises of Turf Valley, L.P.'s Amended Counter Complaint" (ECF 83, "Mot."), accompanied by a supporting memorandum (ECF 83-1, "Mem.") (collectively, the "Motion").[3]  Mangione opposes the Motion (ECF 88, "Opposition" or "Opp."), and Columbia has replied (ECF 89, "Reply").

No hearing is necessary to resolve Columbia's Motion.  *See* Local Rule 105.6.  For the reasons that follow, the Motion will be granted in part and denied in part.

## I. Background[4]

Central to the parties' dispute are several easements, including two granted six decades ago.  On July 28, 1954, H. Lee Ramsburg and Lillian S. Ramsburg granted a right of way to Columbia's predecessor in interest, Atlantic Seaboard Corporation ("Atlantic"), which was recorded in the land records of Howard County.  *See* Am. C-Compl. ¶ 10; *id.* Exh. 3 (ECF 80-3, copy of deed).  In addition, on July 29, 1954, Samuel M. Pistorio and Constance V. Pistorio granted a right of way to Atlantic, which was also recorded in the Howard County land records.

---

[2] Mangione attached 17 exhibits to the Amended Counter-Complaint.  *See* ECF 80-1 through 80-17 (labeled Exhibit 1 through 17).

[3] Previously, on June 12, 2014, Columbia had filed an "Answer and Affirmative Defenses to Mangione Enterprises of Turf Valley, L.P.'s Amended Counter-Complaint" (ECF 82, the "Answer").  However, Mangione did not object to Columbia's filing of the Motion after it had already filed the Answer, and thus I decline to address whether the subsequent filing of the Motion was improper.

*See* Am. C-Compl. ¶ 9; *id.* Exh. 2 (ECF 80-2, copy of deed).  Atlantic paid a sum of $211.00 to

the Ramsburgs and a sum of $332.00 to the Pistorios in connection with the grants (Am. C-

Compl. Exh. 2 and 3 are collectively the "1954 Easements").  Am. C-Compl. ¶ 25.

Each deed provides Atlantic and "its successors and assigns," which came to include

Columbia, "the right to lay, maintain, operate and remove a pipe line for the transportation of

gas."  Am. C-Compl. Exh. 2 and 3.  In addition, each deeds states: "It is agreed that the gas line

to be laid under this grant shall be constructed and maintained below cultivation, so that Grantors

may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate

said lines."  *Id.*[5]  Further, each deed provides: "Also where necessary and convenient, Grantee

may haul over the above described lands such pipe and material needed in the construction of the

lines on adjoining lands."  *Id.*  Sometime between its acquisition of the 1954 Easements and

1958, Atlantic installed a natural gas pipeline, known as "Line MB," pursuant to those

easements.  *See* Am. C-Compl. ¶ 15.

Beginning in 1958 and continuing into the early 1960s, the Pistorios developed their

property into a golf course resort, with two 18-hole golf courses, cart paths, in-ground irrigation

systems for each golf course, a club house, a swimming pool, tennis courts, a driving range,

practice facilities, and a parking lot.  *See* Am. C-Compl. ¶¶ 16-17.  Mangione alleges that during

---

[4] This Background is drawn largely from Mangione's Amended Counter-Complaint.  At this juncture, the court "'must accept as true all of the factual allegations contained in the [Amended Counter-Complaint],'" and must "'draw all reasonable inferences in favor of'" Mangione.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

[5] Unlike a 1973 Easement, discussed *infra*, the 1954 Easements do not contain language addressing issues such as which party is responsible for repair costs associated with damages caused by the operation, maintenance, or removal of the pipeline.

the installation of these improvements, "Atlantic personnel were on site to advise and assist in the installation of the . . . Improvements in and around the gas pipeline." *Id.* ¶ 18.  By 1966, the Pistorios and the Ramsburgs had transferred their titled interests to Turf Valley Associates, which eventually sold that land (the "Turf Valley Property" or the "Property") to Mangione. *See* Am. C-Compl. ¶ 11.

In 1973, Turf Valley Associates granted Columbia another right of way on the Property (the "1973 Easement") for "the right to lay, maintain, operate and remove a pipe line for the transportation of gas." *See* Am. C-Compl. ¶¶ 12, 19; *id.* Exh. 4 (ECF 80-4, copy of deed). Columbia obtained the 1973 Easement, for which it paid a sum of $1,705.00, in order to construct a second pipeline, known as "Line MA." *See* Am. C-Compl. ¶¶ 12, 19; *id.* Exh. 4.

Although the 1973 Easement contains provisions similar to the 1954 Easements, the 1973 Easement also states, *inter alia*, that "Grantee shall pay Grantor for all damages done in said operation to the lands, trees, shrubs, or to any structures" by agents or employees of Grantee; that "Grantee further agrees to pay for any damages that may arise from the operation, maintenance and removal of said lines"; that upon completion of Grantee's work, "the surface of the ground appurtenant to said gas line shall be smoothed, and all excavation and pits shall be forthwith filled in by Grantee"; that Grantee "agrees to pay Grantor for the entire cost of seeding sodding, cleanup and repairs caused in any way by the granting of this Easement, and further Grantee agrees to pay Grantor for any maintenance to the said property of Grantor necessary to put the golf courses back into the condition of such prior to the granting of this easement and will restore the surface of the ground in as good condition as when entered upon by Grantee or his agents, employees or licensees." *See id.*  In addition, the 1973 Easement states that "Grantee shall pay

Grantor for the loss of [certain] profits due to the installation of the said pipe line," up to certain amounts specified in the deed. *Id.* And, the 1973 Easement provides that "Grantor shall not construct . . . any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of the pipe line or appurtenances constructed hereunder and will not change the grade of said right of way." *Id.*

In December 1978, Turf Valley Associates sold the Property, encumbered by the deeds described above, to Mangione. *See* Am. C-Compl. ¶¶ 7-8; *id.* Exh. 1 (ECF 80-1, deed reflecting sale to Mangione). Thereafter, in 1984 Mangione entered into an additional right of way agreement with Columbia, under which Columbia was allowed "to construct, lay, maintain, operate, repair, replace, alter the size of, and remove two pipelines not to exceed 26 inches in diameter for the transportation of gas." *See* Am. C-Compl. ¶ 13; *id.* Exh. 5 (ECF 80-5, copy of deed).

Between 1988 and 1997, Mangione "added additional improvements to the Property," including a hotel, conference and banquet facilities, additional parking, and modifications to the practice facilities. *See* Am. C-Compl. ¶ 20. According to Mangione, among these improvements the only aspect that was "newly installed over the gas pipeline pathway [was the] additional parking spaces," which Mangione "installed with the permission of Columbia." *Id.* Although Mangione also made certain upgrades to the tennis courts, the courts remained in their original location. *See id.*

During that time period, Columbia filed suit in this Court against Mangione, apparently as a result of Mangione's planting of a tree in the Line MA right-of-way, and its erection of a "modular office," a "ground level and elevated driving range deck," and an additional tree, all in

the Line MB right-of-way.  *See* Civil Case AMD-94-2955, "Declaratory Judgment and Order"

(docketed in ELH-13-115 as ECF 13-1 and 41-3 and in ELH-13-2317 as ECF 9-2).

On October 31, 1995, Judge Andre Davis, at the time a member of this Court, entered a

Declaratory Judgment and Order,[6] that stated, *inter alia*:

> (6)  Columbia is required to maintain a high-pressure pipeline; to do so, it must occasionally uncover and replace portions of the pipeline.  This maintenance work requires the use of heavy construction equipment on the surface in the vicinity of the pipeline, and the equipment and work require[] at least 25 feet of unobstructed access to the pipeline on each side . . . .

> \* \* \*

> (8) . . . . To reasonably exercise its right-of-way for Lines MA and MB, Columbia must keep 25 feet on either side of its pipeline clear of permanent obstructions . . . .

> \* \* \*

> (11) [Mangione]'s refusal to remove the structures that it has located within Columbia's rights-of-way constitutes an unreasonable interference with the rights-of-way in that it prevents Columbia from complying with applicable Federal laws and regulations for the safety of the public, and it jeopardizes Columbia's ability to maintain its pipeline for providing natural gas to its customers.

> (12) [Mangione]'s location of structures in Columbia's natural gas pipeline rights-of-way is in violation of Columbia's rights under the Deeds of Easement granting the rights-of-way to Columbia under Maryland law . . . .

> (13) [Mangione] shall, within 30 days of the date of this Order, remove all structures that are (a) within 30 feet of Columbia's pipeline designated Line MA, and (b) within 25 feet of Columbia's pipeline designated Line MB, including [the module office, the ground level and elevated driving range deck, and the tree.]

---

[6] In connection with their briefing concerning Columbia's Motion, neither party has raised arguments invoking principles of *res judicata* or collateral estoppel, either in connection with Judge Davis's order or otherwise.

(14) [Mangione] shall in the future refrain from locating any permanent structures and trees, except grass and seasonal crops, within 30 feet of Columbia's pipeline designated Line MA and within 25 feet of Columbia's pipeline designated Line MB[.]

Eventually, Columbia decided to replace Line MB, using a "lift and lay method," in which it would replace the pipeline while keeping it in the original location. *See* Am. C-Compl. ¶¶ 30, 32. Prior to the construction, representatives of Columbia and Mangione met to discuss the proposed project. *See* Am. C-Compl. ¶ 31.[7] However, the parties were unable to reach an agreement regarding the pipeline replacement project, including details concerning restoration costs. *See* Am. C-Compl. ¶ 33. According to Mangione, it "provided Columbia an itemized estimation of the restoration cost" associated with the pipeline replacement. *Id.* But, Columbia asserted that it was "not required to pay for restoration of [i]mprovements," which Columbia characterized as "encroachments" that were improperly located on the rights of way that Columbia had acquired. *Id.*

Subsequently, Columbia filed a "Complaint for Declaratory Judgment and Injunctive Relief" on January 10, 2013 (ECF 1, the "Declaratory Complaint"), to determine whether certain improvements impermissibly encroach upon the 1954 Easements and 1973 Easements. *See* Am. C-Compl. ¶ 34. As Mangione explains, Columbia alleges in the Declaratory Complaint that it is entitled to a 50-foot right of way to access Line MB, and that federal regulations and orders authorize its replacement of Line MB. *See id.* ¶¶ 37-39. However, Mangione disputes those claims. *See id.*

---

[7] Mangione does not specify the timing of Columbia's decision, but it appears likely that the parties' discussions occurred in 2012, preceding Columbia's filing of its complaint in this case on January 10, 2013 (ECF 1, referred to here as the "Declaratory Complaint").

Columbia also filed another complaint on May 3, 2013, *see* Civil Case JFM-13-1326, which sought to condemn a temporary work space to allow for the Line MB pipeline replacement work. *See* Am. C-Compl. ¶ 35. The parties settled that suit via a memorandum of understanding, dated September 17, 2013 (the "MOU"). *See* Am. C-Compl. ¶ 36; *see also id.* Exh. 12 (ECF 80-12, copy of the MOU).[8]

On August 9, 2013, Mangione filed a motion for a temporary restraining order (ECF 4, case ELH-13-2317, the "TRO Motion"). A hearing on the TRO Motion was held on August 16, 2013, after which I issued an Order that stated, *inter alia*:

> [Mangione] shall not interfere with Columbia's right of access to the easements Columbia maintains for Line MB for the purposes of replacing Line MB within those easements; [and]

> [Mangione] shall not interfere with Columbia's efforts to remove the structures and encroachments within the easements Columbia maintains for Line MB, as necessary to maintain and replace Line MB; [and]

> [F]or purposes of allowing Columbia to perform its work, it shall have access to 25 feet on each side of Line MB, for a total of 50 feet of access[.]

ECF 11, case ELH-13-2317 (the "August 2013 Order"). Although the August 2013 Order pertained only to Line MB, it was consistent with Judge Davis's prior order of October 31, 1995.

---

[8] The MOU is the subject of Mangione's breach of contract claim in Count VI. Columbia has not sought the dismissal of that count in its Motion.

Thereafter, Columbia entered the Turf Valley Property and performed the pipeline replacement work, which according to Mangione was an unlawful intrusion. *See* Am. C-Compl. ¶¶ 42, 52.

Additional facts will be included in the Discussion.

## II. Fed. R. Civ. P. 12(b)(6) Standard

Columbia's Motion invokes Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. But, the rule demands more than bald accusations or mere speculation. *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is

plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *see Commonwealth Prop. Advocates, LLC v. Mortg.*

*Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint.   *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).   "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6).   *Id.*   (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).   However, a court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448.   To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay*

*Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

### III. Discussion

In its Motion seeking partial dismissal of the Amended Counter-Complaint, Columbia argues that Mangione has failed to state a claim with regard to five of their seven counts, including the claims for trespass (Count II); "Breach of Contract - Easement" (Count III); negligence (Count IV); negligent misrepresentation (Count V); and "Inverse Condemnation" (Count VII). *See* Mot. at 1. Further, Columbia requests dismissal of Mangione's claim for attorneys' fees. *See id.*[9]

A. Trespass (Count II)

In Count II, Mangione alleges that Columbia trespassed on the Turf Valley Property by physically entering the land in connection with the pipeline replacement work. *See* Am. C-Compl. ¶ 52. According to Mangione, Columbia's "intrusion was unlawful," as it was made without Mangione's consent and over Mangione's objections. *See id.* ¶¶ 52-53. Columbia

---

[9] Regarding choice of law, a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). As to contract claims, Maryland applies the law of the state in which the contract was made ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*"). *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).

Both parties apply Maryland law to the claims raised in Mangione's Amended Counter-Complaint, and it appears that their approach is correct. In any event, "[c]hoice-of-law analysis becomes necessary . . . only if the relevant laws of . . . different states lead to different outcomes." *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 750 (D. Md. 2003).

contends that Count II fails to state a trespass claim because its entrance onto the Property was authorized. *See* Mem. at 5.

"'In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent.'" *Royal Investment Gp., LLC v. Wang*, 183 Md. App. 406, 445, 961 A.2d 665, 688 (2008) (citation omitted), *cert. granted*, 408 Md. 149, 968 A.2d 1064, *appeal dismissed before argument*, 409 Md. 413, 975 A.2d 875 (2009); *see Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508, 883 A.2d 1008, 1014 (2005).

Of relevance here, a "trespasser" has been defined as "'one who intentionally and without consent *or privilege* enters another's property.'" *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 689, 705 A.2d 1144, 1148 (1998) (quoting *Wagner v. Doehring*, 315 Md. 97, 102, 553 A.2d 684, 687 (1989)) (emphasis added); *see Erson v. International Special Attractions, Ltd.*, 2014 WL 3055554, at *3 (D. Md. July 1, 2014); *see also Legacy Funding LLC v. Cohn*, 396 Md. 511, 520, 914 A.2d 760, 765 (2007) (defining trespass as "an unauthorized intrusion upon the possessory interest in property of another"); *Bittner v. Huth*, 162 Md. App. 745, 752-53, 876 A.2d 157, 161 (2005) ("'Every *unauthorized* entry upon the land of another is a trespass . . . .'") (quoting *Tyler v. Cedar Island Club, Inc.*, 143 Md. 214, 219, 122 A. 38, 39 (1923)) (emphasis added; further citation omitted).   In other words, even where an alleged trespasser acts in the absence of consent, an entry may still be privileged or authorized.

According to Columbia, the trespass claim fails because its entrance onto the Turf Valley Property in connection with the Line MB replacement work was "authorized and privileged."

Mem. at 6. Among other arguments, Columbia asserts that "Mangione noticeably ignores the fact that, in August 2013, this Court entered an order permitting Columbia to enter the Property and replace Line MB. Thus, even if the 1954 [] Easements did not authorize Columbia to enter the [] Property, the Court's Order certainly did." Mem. at 8. Moreover, in the Reply, Columbia argues that, under Mangione's theory of liability for trespass, "Columbia could not legitimately rely on the Court's August 16, 2013 Order authorizing it to enter [the Property] and to conduct the pipeline replacement work." *Id.* at 2.

Of relevance to this contention, Columbia indicates that this Court may take judicial notice of the August 2013 Order. *See* Mem. at 8 and Reply at 2 (citing *Anderson v. FDIC*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) ("we believe a district court should properly take judicial notice of its own records")). *See also, e.g.*, *Cason v. Holder*, 815 F. Supp. 2d 918, 922 n.8 (D. Md. 2011).

As indicated, on August 16, 2013, I held a hearing on Mangione's TRO Motion. Following that hearing, I issued the August 2013 Order that was quoted earlier. *See* ECF 11, case ELH-13-2317.[10]

Mangione counters that the August 2013 Order did not determine the "underlying rights

---

[10] For convenience, I will restate a portion of the Order:

[Mangione] shall not interfere with Columbia's right of access to the easements Columbia maintains for Line MB for the purposes of replacing Line MB within those easements; [and]

[Mangione] shall not interfere with Columbia's efforts to remove the structures and encroachments within the easements Columbia maintains for Line MB, as necessary to maintain and replace Line MB; [and]

[F]or purposes of allowing Columbia to perform its work, it shall have access to 25 feet on each side of Line MB, for a total of 50 feet of access[.]

of the parties" under the 1954 Easements, and that those rights "remain at issue" in this suit. Opp. at 2. "In a final decision," Mangione asserts, it should be determined that Columbia lacked the "right," "privilege," or "authority" to replace Line MB, and that, notwithstanding this Court's August 2013 Order, Columbia's "entry onto Mangione's property was a trespass." Opp. at 3.

In *Humphrey v. Herridge*, 103 Md. App. 238, 240, 653 A.2d 491, 492 (1995), which both parties discuss, attorneys representing Herridge, who had obtained summary judgment, filed a writ of execution by levy on their client's behalf. Thereafter, the county sheriff "executed the writ and levied upon the Humphreys' residence." *Id.* The Humphreys sued Herridge for trespass, but the Maryland Court of Special Appeals affirmed the dismissal of that claim. It said, 103 Md. App. at 246, 653 A.2d at 495 (first modification in original):

> "Every *unauthorized* entry upon the property of another is a trespass which entitles the owner to a verdict for some damages." *Brazerol v. Hudson*, 262 Md. 269, 273, 277 A.2d 585 (1971) (quoting *Patapsco Loan Co. v. Hobbs*, 129 Md. 9, 15, 98 A. 239 (1916)). "A general privilege[, however,] applies to an attachment issued upon a judgment regularly entered by a court of competent jurisdiction, even though the judgment may later be set aside or reversed because of error on the part of the judge." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 413, 494 A.2d 200 (1985). Neither party questions the propriety of the summary judgment entered against the Humphreys. That judgment entitled Herridge to levy against the Humphreys' real property in order to collect the money owed. [The] interference with the Humphreys' possessory interest in their real property was, therefore, authorized, and [Herridge and his counsel] cannot be held liable for trespass.

In the Opposition, Mangione seeks to distinguish *Humphrey* on the ground that "the merits in *Humphrey* were finally determined while in this case the merits have not been finally determined." Opp. at 3. Mangione's argument is correct, as far as it goes; the merits of its claims against Columbia, and Columbia's claims against Mangione, have yet to be decided. Nevertheless, with respect to the trespass claim, Mangione fails to state a viable claim in light of

the Court's August 2013 Order that authorized the entry onto the Turf Valley Property that Mangione insists constituted a trespass.[11]

A remaining issue is whether dismissal of the trespass claim should be with or without prejudice. Denial of leave to amend is appropriate where "'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards*, *supra*, 178 F.3d at 242 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). *See Anand*, *supra*, 754 F.3d at 200; *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 409 (4th Cir. 2013); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 257 (D. Md. 2013). Notably, Mangione already has had the opportunity to amend its allegations against Columbia once, as the Amended Counter-Complaint followed Mangione's prior "Complaint for Declaratory Judgment and Injunctive Relief," originally filed in the Circuit Court for Howard County on August 9, 2013, and docketed as ECF 2, case ELH-13-2317, following removal to this Court.

Columbia requests dismissal of the Amended Counter-Complaint, with prejudice. *See, e.g.*, Mem. at 1; Reply at 15. According to Columbia, "any amendment would be futile and insufficient to assert viable claims." Reply at 15. Although Mangione does not address leave to amend in the Opposition, in a proposed order Mangione requests, in the event the Court grants Columbia's Motion, that it "do so without prejudice," thereby permitting Mangione to amend its claims. *See* ECF 88-3 (proposed order, submitted with Opposition). Because Mangione's

---

[11] Given this conclusion, I need not address Columbia's additional arguments that its easements and federal regulations also permitted its entry onto the Turf Valley Property. *See* Mem. at 7.

trespass theory is fundamentally at odds with this Court's August 2013 Order, and it is not apparent how Mangione can remedy that defect, Count II will be dismissed with prejudice.

## B.  "Breach of Contract - Easement" (Count III)

Mangione alleges that, even assuming Columbia's replacement work on Line MB "was performed under the right of" applicable easements, "Columbia was obligated to fully restore [the Property] to the condition it was in prior to Columbia's work."  *See* Am. C-Compl. ¶ 56. According to Mangione, "Columbia failed to fulfill its obligations to fully restore" the Property, in breach of Columbia's obligations under those easements. *See id.* ¶ 57.

"The interpretation of mortgages, plats, deeds, easements and covenants has been held to be a question of law." *Webb v. Nowak*, 433 Md. 666, 681, 72 A.3d 587, 596 (2013); *see Gordy v. Ocean Park, Inc.*, 218 Md. 52, 60, 145 A.2d 273, 277 (1958) ("That, as a general rule, the construction or interpretation of all written instruments is a question of law for the court is a principle of law that does not admit of doubt.").  Where an easement is created by an express grant, courts will construe the conveyance by applying traditional principles of contract interpretation.  *See Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 314-15, 68 A.3d 843, 855-56 (2013); *Maryland Agric. Land Preserv. Found. v. Claggett*, 412 Md. 45, 62, 985 A.2d 565, 575 (2009); *Miller v. Kirkpatrick*, 377 Md. 335, 351, 833 A.2d 536, 545 (2003); *Chevy Chase Land Co. v. United States*, 355 Md. 110, 143, 733 A.2d 1055, 1073 (1999) ("[T]he primary consideration in construing the scope of an express easement is the language of the grant.").

Under Maryland law, "'[t]he cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51,

73 A.3d 224, 232 (2013) (citation omitted); *see Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, Inc.*, 376 Md. 157, 166, 829 A.2d 540, 546 (2003). To determine the parties' intentions, courts first look to the written language of the contract. *Id.* "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (citation omitted).

Although the language of a deed is paramount, "[t]he principles of deed construction require . . . consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]'" *Claggett*, 412 Md. at 63, 985 A.2d at 576 (citation omitted). And, a court "must consider the deed as a whole, viewing its language in light of the facts and circumstances of the transaction at issue as well as the governing law at the time of conveyance." *Chevy Chase Land Co.*, 355 Md. at 123, 733 A.2d at 1062.

When a contract's language is clear and unambiguous, "its construction is for the court to determine." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001); *see DIRECTV, Inc.*, 376 Md. at 312, 829 A.2d at 632 ("[W]here the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court."). A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean. *See Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire & Police Employees Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001). Moreover, "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or

draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardship.'" *Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (quoting *Canaras v. Lift Truck Servs.*, 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443 (Table), 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

"A contract is not ambiguous merely because the parties disagree as to its interpretation." *Lerner Corp. v. Three Winthrop Properties, Inc.*, 124 Md. App. 679, 685, 723 A.2d 560, 563 (1999) (citing *Fultz v. Shaffer*, 111 Md. App. 278, 299, 681 A.2d 568, 578 (1996)). Rather, a "contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person." *Sy-Lene of Washington*, 376 Md. at 167, 829 A.2d at 547; *see Cochran v. Norkunas*, 398 Md. 1, 17, 919 A.2d 700, 710 (2007); *Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444-45 (1999); *Calomiris*, 353 Md. at 436, 727 A.2d at 363. To determine whether a contract is ambiguous, a court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time" that they enter into the contract. *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985); *see Young v. Anne Arundel Cnty.*, 146 Md. App. 526, 587, 807 A.2d 651, 687 (2002).

In the context of a motion to dismiss, the construction of an ambiguous contract "'is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim.'" *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 394 (D. Md. 2011) (applying Maryland contract law) (quoting *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir.

1972)); *see also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992) (applying Maryland contract law and reversing trial court's grant of a motion to dismiss because the contract in issue was "not free of ambiguity"); *Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728, 736 (D. Md. 2005) (applying Ohio contract law and noting that "an ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim").

"If the contract is ambiguous," the court may, at an appropriate time, "consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Cnty. Commissioners of Charles Cnty. v. St. Charles Associates Ltd. P'ship*, 366 Md. 426, 445, 784 A.2d 545, 556 (2001); *see John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 415 Md. 313, 327, 999 A.2d 1066, 1074 (2010). In the context of summary judgment, if "extrinsic evidence . . . leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must . . . be refused and interpretation left to the trier of fact.'" *Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC*, 875 F. Supp. 2d 511, 526 (D. Md. 2012) (quoting *Washington Metro. Area Transit. Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007)).

With respect to the interpretation of easements, in *Long Green Valley Ass'n*, 432 Md. at 314-15, 68 A.3d at 855-56 (modifications in original), the Maryland Court of Appeals explained:

> The intention of the parties at the time the easement was granted is the North Star guiding our interpretation of it. *See Miller*, 377 Md. at 351, 833 A.2d at 545 ("The grant of an easement by deed is strictly construed . . . . '[A] court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible.'") (citations omitted). Therefore, our focal point is "the language of the agreement itself[,]" seeking to discern "'what a reasonable person in the position of the parties would have meant at the time it was effectuated.'"

*Claggett*, 412 Md. at 62-63, 985 A.2d at 575-76 (quoting *White v. Pines Community Improvement Ass'n, Inc.*, 403 Md. 13, 32, 939 A.2d 165, 176 (2008)).

Where the instrument includes clear and unambiguous language of the parties' intent, we will not sail into less charted waters to interpret "'what the parties thought that the agreement meant or intended it to mean.'" *Garfink v. Cloisters at Charles, Inc.*, 392 Md. 374, 392-93, 897 A.2d 206, 217 (2006) (quoting *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)). Rather, we resort to extrinsic evidence in constructing an easement only "when the intent of the parties and the purpose of a restrictive covenant cannot be divined from the actual language of the covenant in question[.]" *City of Bowie v. MIE, Props., Inc.*, 398 Md. 657, 681, 922 A.2d 509, 523 (2007).

As indicated, the 1954 Easements, which are associated with Line MB, provide Columbia with "the right to lay, maintain, operate and remove a pipe line for the transportation of gas" on the Turf Valley Property. Am. C-Compl. Exh. 2 and 3. And, each of the 1954 Easements states: "It is agreed that the gas line to be laid under this grant shall be constructed and maintained below cultivation, so that Grantors may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said lines." *Id.*

According to Columbia, Count III must be dismissed because Mangione "fails to identify a contractual obligation that Columbia allegedly breached." Mem. at 8. In support of that contention, Columbia asserts that the 1954 Easements "are completely silent as to any duty to restore the Property." Mem. at 9. Moreover, Columbia insists that the 1954 Easements "are unambiguous in that they clearly do not contain any provision concerning a duty to restore the Property following pipeline work or a duty to pay specific damages to the landowner." *Id.* at 8-9. In Columbia's view, Mangione's argument amounts to an improper effort to "graft onto" the 1954 Easements certain requirements found only in the 1973 Easement. *See* Mem. at 8-9.

- 21 -

Mangione counters that Columbia has breached its obligation to respect Mangione's right to "fully use and enjoy the premises." *See* Am. C-Compl. Exh. 2 and 3; *see* Opp. at 9. Like Columbia, Mangione asserts that the 1954 Easements "are unambiguous," but it adopts a markedly different interpretation than the one proffered by Columbia. *See* Opp. at 11. Specifically, Mangione asserts that its right to "fully use and enjoy the premises," which is expressly provided for in the 1954 Easements, includes "the right to have the golf course/country club improvements . . . and to their use, in perpetuity." Opp. at 9. In connection with that claim, Mangione argues that the deeds should be interpreted not only based on "the four corners of the agreements," but also on, *inter alia*, the knowledge of the parties in 1954 and the parties' subsequent conduct. *See id.* at 11-12.

Columbia reiterates in the Reply that Mangione fails to identify any contractual duties requiring Columbia either to "cooperate in terms of coordinating [Columbia's] replacement pipeline work at a time that would be least disruptive to Mangione's business" or to "repair and restore [the Property] to Mangione's exact specifications, including replacing encroachments built over Columbia's pipeline, following the construction work." Reply at 7.

Turning to the language of the 1954 Easements, it is noteworthy that both documents are brief, containing only a few sentences setting forth the parties' rights. As such, the language of the deeds sheds little light on the interplay between Mangione's right to "fully use and enjoy the premises" and Columbia's right to "maintain and operate" the Line MB pipeline. In this respect, the 1954 Easements stand in marked contrast to the 1973 Easement pertaining to Line MA. The 1973 Easement contains several provisions similar to those found in the 1954 Easements. *See* Am. C-Compl. Exh. 4. However, as noted, the 1973 Easement also details a host of other

obligations, including, *inter alia*, that "Grantee shall pay Grantor for all damages done in said operation to the lands, trees, shrubs, or to any structures"; that "Grantee [shall] pay for any damages that may arise from the operation, maintenance and removal of said lines"; that "Grantee [shall] pay Grantor for the entire cost of seeding sodding, cleanup and repairs caused in any way by the granting of this Easement"; and that "Grantee [shall] pay Grantor for any maintenance to the said property of Grantor necessary to put the golf courses back into the condition of such prior to the granting of this easement . . . ." *See id.*

In other words, unlike the 1973 Easement, the 1954 Easements are essentially silent as to whether and to what extent, if any, Columbia is obligated to restore or compensate Mangione for any restoration required as a result of pipeline construction, maintenance, or removal work. Although "[a] contract's silence on a particular issue does not, by itself, create ambiguity as a matter of law," silence "creates ambiguity when it involves a matter naturally within the scope of the contract." *Azat v. Farruggio*, 162 Md. App. 539, 551, 875 A.2d 778, 785 (2005). The treatise Richard A. Lord, Williston on Contracts, 34:7 (4th ed. 2009) provides:

> Parol evidence of usage is also admissible to supply a missing or omitted term or provision to a contract when the contract is silent as to that particular term or provision. So, even when a contract is not ambiguous, if it is silent on a given issue, evidence of industry custom and usage may be admitted to explain or supplement the contract, so long as such evidence is consistent with and does not contradict the express terms of contract.

To be sure, Mangione cannot impose additional obligations that its predecessors-in-interest could have bargained for, but did not. Nevertheless, in my view, it is premature to accept Columbia's construction of the 1954 Easements. Further factual development may shed light on the interpretive issues regarding the 1954 Easements, including Columbia's obligation— or lack thereof—to minimize or repair damage to the Turf Valley Property, in connection with its

right to operate the pipeline, given Mangione's equal right to "fully use and enjoy the premises." *See* Am. C-Compl. Exh. 2 and 3.  It may be, as Columbia insists, that no such obligation exists or that, at the very least, Columbia is not required to restore the Property "to Mangione's exact specifications."  *See* Reply at 7.  At the same time, it would seem unlikely that a grantee in Columbia's position would be permitted to inflict damage, without limit, on burdened property, particularly where governing deeds recognize the landowner's right to "fully use and enjoy the premises." *See* Am. C-Compl. Exh. 2 and 3.  In light of those considerations, I am not persuaded that dismissal of Count III is warranted.

C.  Negligence (Count IV)

In its negligence claim, Mangione alleges that Columbia, "while exercising whatever rights" it had pursuant to the easements, "owed a duty of care to [Mangione] . . . to minimize the damage to [Mangione's] property and business and to restore [Mangione's] property fully to its condition prior to the work performed by Columbia."  *See* Am. C-Compl. ¶ 60.  Columbia allegedly breached this duty "by failing to coordinate its work to minimize [Mangione's] loss of business and by failing to fully restore [Mangione's] property to the condition it was in prior to Columbia's entry" onto the land.  *Id*. ¶ 61.  Mangione claims it "suffered damages as a direct and proximate result of Columbia's action, both in loss of business and in expenses to restore its property to the condition it was in prior to Columbia's entry upon [Mangione's] land."  *Id.* ¶ 62.

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'"  *100 Investment Ltd. Partnership*

*v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

The Maryland Court of Appeals adheres to Prosser and Keeton's definition of "duty" as "'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward one another.'" *Blondell v. Littlepage*, 413 Md. 96, 120, 991 A.2d 80, 94 (2010) (quoting W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 53 (5th ed. 1984)). Thus, "determining whether 'an actionable duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant.'" *100 Investment Ltd. Partnership*, 430 Md. at 213, 60 A.3d at 10 (quoting *Blondell*, 413 Md. at 120, 991 A.2d at 94).

"It is a settled and familiar proposition that not every duty assumed by contract will sustain an action sounding in tort." *100 Investment Ltd. Partnership*, 430 Md. at 212, 60 A.3d at 10 (citations and quotation marks omitted). Accordingly, "'[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques*, 307 Md. at 534, 515 A.2d at 759 (quoting *Heckrotte v. Riddle*, 224 Md. 591, 595, 168 A.2d 879, 882 (1961)); *see*

*Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253, 725 A.2d 1053, 1058 (1999) ("A contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis."); *Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–29, 424 A.2d 744, 754 (1981) ("Mere failure to perform a contractual duty, without more, is not an actionable tort.").

"To determine whether a tort duty exists in a particular context, [a court will] examine: (1) 'the nature of the harm likely to result from a failure to exercise due care,' and (2) 'the relationship that exists between the parties.'" *100 Investment Ltd. Partnership*, 430 Md. at 213-14, 60 A.3d at 10-11 (quoting *Jacques*, 307 Md. at 534, 515 A.2d at 759). The Maryland Court of Appeals explained in *Jacques*, 307 Md. at 534-35, 515 A.2d at 759-60 (footnote and citations omitted):

> Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability.

"[T]he rationale underlying the requirement of privity or its equivalent as a condition of liability for negligent conduct, including negligent misrepresentations, resulting in economic damages [is] to avoid 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'" *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 671, 762 A.2d 582, 596 (2000) (citation omitted). "A defendant can protect itself from such unpredictable and unlimited liability in cases where there is a close nexus between the parties. Such a relationship might stem from a defendant's knowledge of the plaintiff's identity, the class in which a plaintiff belongs, and the defendant's knowledge that the prospective plaintiff may be

relying on the information provided by a defendant." *100 Investment Ltd. Partnership*, 430 Md. at 218, 60 A.3d at 13 (citing *Walpert*, 361 Md. at 671, 687, 762 A.2d at 596, 605).

As indicated, Mangione identifies two duties that Columbia purportedly owed to it, and which form the basis for the negligence claim raised in Count IV.  Specifically, Mangione insists that Columbia owed it a duty of care (1) "to minimize the damage to [Mangione's] property and business," and (2) "to restore [Mangione's] property fully to its condition prior to the work performed by Columbia."  Am. C-Compl. ¶ 60.  Columbia allegedly breached the first duty by "failing to coordinate its work to minimize [Mangione's] loss of business . . . ."  *Id.* ¶ 61.  With respect to this duty, Mangione explains it its Opposition that Columbia had a duty "to cooperate with Mangione in scheduling [repair work] to mitigate the economic impacts to Turf Valley's business operations."  Opp. at 13.  As for the second duty, which pertains to the restoration of the Turf Valley Property, Columbia purportedly breached a duty of care by "failing to fully restore [Mangione's] property to the condition it was in prior to Columbia's entry" onto the land.  Am. C-Compl. ¶ 61.

Columbia contends that the negligence claim must be dismissed because Mangione "fails to identify a tort duty that Columbia owed to Mangione."  Mem. at 11.  According to Columbia, rather than identifying any independent legal basis for a tort duty, Mangione instead points to Columbia's conduct in exercising its rights under the 1954 and 1973 Easements.  Mem. at 12. Indeed, the two alleged duties identified in Mangione's negligence claim are virtually identical to the alleged contractual obligations cited in Mangione's breach of contract claim.  *See* Opp. at 10 (describing two aspects of breach of contract claim).

Notably, Mangione acknowledges the commonalities between the breach of contract claim in Count III and the negligence claim in Count IV, admitting that "there are similar and overlapping considerations," and that, as a result, some contentions in the two relevant sections of the Opposition brief will be applicable to both claims.   Opp. at 9.   However, Mangione emphasizes in the Opposition, *see id.* at 12:   "There are situations . . . when responsibilities imposed by a contractual relationship are supplemented with tort duties."   *100 Investment Ltd. Partnership*, 430 Md. at 212, 60 A.3d at 10.   Indeed, an overlap between a breach of contract claim and a tort claim is not necessarily fatal to the latter claim.   *See Jacques*, 307 Md. at 534-35, 515 A.2d at 759-60.

In support of Mangione's claim that there is an "intimate nexus" between the parties, such that a tort duty exists in this case, Mangione points to the parties' dealings for more than three decades, and asserts that it "has cooperated (and continues to do so) with Columbia since it acquired the Property in December 1978."   Opp. at 11.   Mangione also points out that "Columbia was well aware of the improvements to Turf Valley," which in Mangione's view is evidenced by the language pertaining to the 1973 Easement, the "multiple yearly visits by [Columbia] employees to inspect the gas pipelines at the Property," and the communications between the parties regarding both the improvements and the Line MB replacement work.   *Id.*

As Mangione recognizes, "[t]he parties have a relationship of dominant and servient occupiers of specified land in Howard County, Maryland: to wit, rights-of-way easements through Mangione's Property known as Turf Valley."   Opp. at 12-13.   Significantly, Mangione cites no case, and this Court is aware of none, that has found an "intimate nexus" based on the

parties' status as the dominant and servient occupiers of land burdened by an easement.  Rather, the cases on which the parties rely involve markedly different facts than those presented here.

For instance, *100 Investment Ltd. Partnership*, 430 Md. at 203, 60 A.3d at 4, involved the issue of "whether a title company owes a duty of care, in tort," to the plaintiff, a customer of the title company, "when conducting a title search" on the customer's behalf.  Among other arguments, the plaintiff "highlight[ed] the importance of the information supplied by title companies to their customers, comparing the title examiner's work to that of doctors, lawyers, accountants, architects, and other professionals that have been found to owe a duty in tort."  *Id.* at 211, 60 A.3d at 9.  The Court of Appeals concluded that title companies owe a duty in tort to their customers, "to use a reasonable degree of skill and diligence in conducting the title search." *Id.* at 231, 60 A.3d at 21.  In so holding, the court observed that "to impose a tort duty on title examiners is not a novel idea," as the Court of Appeals previously had recognized that "'[o]ne who undertakes to examine a title for compensation is bound to exercise a reasonable degree of skill and diligence in the conduct of the transaction.'"  *Id.* at 213, 60 A.3d at 10 (quoting *Corcoran v. Abstract & Title Co. of Md., Inc.*, 217 Md. 633, 637, 143 A.2d 808, 810 (1958) (further stating that faulty title searches are "ordinarily enforced by an action . . . for negligence in the discharge of [the title examiner's] professional duties")) (modifications in *100 Investment Ltd. Partnership*).

Despite Mangione's attempts to portray an "intimate nexus" between the parties, thus producing a tort duty, in my view their connection is little more than a typical (if longstanding) contractual relationship.  *See* Opp. at 12-13.  And, more generally, Mangione's attempt to manufacture a tort duty in this case amounts to an effort to force a square peg into a round hole.

Notably, this is not an instance in which Columbia was aware that Mangione "may be relying on [certain] information provided by" Columbia. *See 100 Investment Ltd. Partnership*, 430 Md. at 218, 60 A.3d at 13 (citing *Walpert*, 361 Md. at 671, 687, 762 A.2d at 596, 605); *see also, e.g.*, *Champion Billiards Cafe, Inc. v. Hall*, 112 Md. App. 560, 570-71, 685 A.2d 901, 906 (1996) ("[T]o impose a tort duty, there must be reasonable reliance by the aggrieved party, a risk of loss, and knowledge by the defendant of both the reliance and the risk of loss."), *cert. denied*, 344 Md. 717, 690 A.2d 523 (1997). Here, Mangione's theory of liability in Count IV is not based on any reliance on its part.

In short, even assuming that a tort duty might arise in the context of an easement, Mangione does not plausibly allege the existence of an "intimate nexus" between the parties, nor has it identified any actionable tort duty, independent of the parties' alleged obligations under the relevant deeds. Under these circumstances, Mangione's negligence claim must fail. *See Evergreen Associates, LLC v. Crawford*, 214 Md. App. 179, 187, 75 A.3d 1038, 1043 (2013) ("[W]ithout a duty, no action in negligence will lie."). And, because Mangione is unable to articulate either a legal or factual basis for a tort duty in this scenario, Count IV will be dismissed, with prejudice.

D.  Negligent Misrepresentation (Count V)

Count V, which raises a claim for negligent misrepresentation, pertains to Columbia's contention that tennis courts on the Turf Valley Property, "though having been located in the same location since 1959 with the knowledge of Columbia, are not permitted and must be removed." Am. C-Compl. ¶ 64. Mangione asserts that, in the event federal regulations adopted since that time provide additional rights to Columbia in connection with its maintenance of the

pipelines, Columbia "had a duty to disclose those rights to the servient landowner," *Mangione*. *Id.* ¶ 66. However, Mangione alleges that even after it informed Columbia of tennis court repair plans that were implemented in 2011, Columbia failed to notify Mangione that the tennis courts could not be replaced. Instead, Columbia allowed the repairs to be completed. *Id.* ¶¶ 67-68. According to Mangione, Columbia "breached its duty to disclose information . . . when it failed to advise" Mangione of certain regulatory changes that, in Columbia's view, prevented the tennis courts from being situated in their historic location. *See id.* ¶¶ 69-71.

In *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 136, 916 A.2d 257, 273 (2007) (quotation marks omitted), the Maryland Court of Appeals set forth the elements of a claim for negligent misrepresentation under Maryland law:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Numerous Maryland cases are to the same effect. *See*, *e.g.*, *Griesi v. Atlantic Gen'l Hosp. Corp.*, 360 Md. 1, 11, 765 A.2d 548, 553 (2000); *Blondell*, 413 Md. at 119, 991 A.2d at 94; *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999); *BG & E v. Lane*, 338 Md. 34, 43, 656 A.2d 307, 311 (1995); *Gross v. Sussex, Inc.*, 332 Md. 247, 256, 630 A.2d 1156, 1161 (1993); *Weisman v. Connors*, 312 Md. 428, 444, 540 A.2d 783, 791 (1988); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 336–37, 439 A.2d 534, 539 (1982); *Virginia Dare Stores v. Schuman*, 175 Md. 287, 291–92, 1 A.2d 897, 899 (1938); *see also Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 290–91 (D. Md. 2003).

In its Motion, Columbia maintains that the negligent misrepresentation claim, like the negligence claim in Count IV, fails based on a lack of a legal duty. *See* Mem. at 12. To that end, Columbia asserts that "Mangione cannot show facts that there was an intimate nexus between it and Columbia when it informed Columbia . . . that it intended to do refurbishment work on the tennis courts." Mem. at 13. Of relevance to that contention, in *Weisman*, 312 Md. at 446, 540 A.2d at 791-92, the Maryland Court of Appeals, citing *Jacques*, 307 Md. at 534-35, 515 A.2d at 759-60, concluded that the "intimate nexus" standard applicable to a traditional negligence claim also applies to negligent misrepresentation claims. Here, however, Mangione fails to establish either that an "intimate nexus" may arise in the context of easements or that such an "intimate nexus" is present here. *See supra.*

Moreover, it is apparent that a garden-variety negligent misrepresentation claim fails for an additional reason—namely, the lack of any actual "false statement" made by Columbia. *See Lloyd*, 397 Md. at 136, 916 A.2d at 273 (to state claim for negligent misrepresentation, plaintiff must allege, among other elements, that "the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement").

Perhaps in recognition of the incongruity between Mangione's allegations and the elements of a typical negligent misrepresentation claim, in the Opposition Mangione seeks to clarify the nature of its claim in Count V. In particular, Mangione asserts that a negligent misrepresentation claim is "sometimes stated as negligent non-disclosure, which is the more appropriate phrase for the instant case." Opp. at 14. Even before Mangione offered this clarification, Columbia had argued in its Motion that, in the event Mangione is pursuing a claim

for "non-disclosure or fraudulent concealment," the Amended Counter-Complaint fails to state such a claim.  *See* Mem. at 14-15.

Insofar as Mangione is attempting to bring a claim of "negligent non-disclosure" that is distinct from either a negligent misrepresentation claim or a fraudulent concealment claim, a "negligent non-disclosure" claim is not viable here.  Notwithstanding Mangione's assertion that negligent misrepresentation claims are "sometimes stated as negligent non-disclosure," references to "negligent nondisclosure" (or "negligent non-disclosure") in Maryland case law are few.  To the extent that courts have addressed claims of "negligent nondisclosure," it is apparent that, to state such a claim, a plaintiff must show "actual reliance on [a] materially incomplete representation[.]"  *Brooks v. Euclid Systems Corp.*, 151 Md. App. 487, 520, 827 A.2d 887, 905 (2003) (citing *B.N. v. K.K.*, 312 Md. 135, 151-53, 538 A.2d 1175, 1183-84 (1988)).

Mangione has not identified any actual representation by Columbia that was "materially incomplete."  Moreover, Mangione concedes that, under the circumstances presented here, an "intimate nexus" between the parties is required to create a tort duty.  *See* Opp. at 14.  In support of Mangione's claim that an "intimate nexus" exists, Mangione invokes the 35 years of dealings between the parties, during which, with few exceptions, the parties allegedly "worked together with respect to development issues and grounds operations and maintenance" at the Turf Valley Property.  Opp. at 14.  But, as explained above, Mangione has not shown an "intimate nexus," as that term is defined under Maryland law.

In an apparent effort to establish a tort duty on an alternative ground, Mangione also asserts that "there are sufficient facts in this matter for finding the existence of a confidential relationship between the parties."  Opp. at 14.  In support of that contention, Mangione cites *200*

*North Gilmor, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480 (D. Md. 2012), which states, in relevant part:

> "[A] confidential relationship may exist in a business relationship.  Certain factors above and beyond a typical business relationship must exist, however . . . . For example, a confidential relationship may exist when there is a relationship independent of the business relationship . . . .  Additionally, a confidential relationship may exist in a business relationship if 'confidences are reposed by one person in another, who as a result gains an influence and superiority over him.'"

*Id.* at 494 (quoting *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 357-58, 984 A.2d 361, 388-89 (2009)) (further citation omitted; ellipses in *200 North Gilmor*).  However, in this case, as in *200 North Gilmor*, 863 F. Supp. 2d at 494, I am not persuaded that the allegations indicate that the parties were engaged in a confidential relationship.[12]

As with its negligence claim in Count IV, Mangione's claim in Count V also fails based on the lack of a tort duty owed to Mangione by Columbia.  Accordingly, Count V will be dismissed, with prejudice.

E.  Inverse Condemnation (Count VII)

Mangione raises a claim for inverse condemnation, based on Columbia's refusal, after the pipeline replacement, to allow Mangione to replace certain tennis courts in their historic location.

---

[12] Notably, the portion of *200 North Gilmor* on which Mangione relies pertains to a claim of fraudulent concealment.  To state a fraudulent concealment claim, a plaintiff must allege:

> "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence."

*Chambers v. King Buick GMC, LLC*, --- F. Supp. 2d ----, 2014 WL 4384316, at *33 (D. Md. Sept. 2, 2014) (quoting *Lloyd*, 397 Md. at 136, 916 A.2d at 273).

*See* Am. C-Compl. ¶ 79.  Mangione asserts that it "was forced to relocate its tennis courts to a new location at significant cost and expense," and that, "[b]ecause Columbia does have condemnation power, its actions amount to an effective taking of [Mangione's] land without just compensation." *Id.* ¶¶ 80-81.

Regarding an "inverse condemnation," in *College Bowl v. Baltimore*, 394 Md. 482, 489-90, 907 A.2d 153, 157 (2006), the Maryland Court of Appeals said:

> In *United States v. Clarke*, 445 U.S. 253, 257[] (1980), the Supreme Court characterized an inverse condemnation as a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." In that regard, the Court adopted the view of D. Hagman, URBAN PLANNING AND LAND DEVELOPMENT CONTROL LAW 328 (1971) that "[i]nverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *Id.* *See also Reichs Ford v. State Roads*, 388 Md. 500, 511, 880 A.2d 307, 313 (2005). In determining whether governmental action constitutes an inverse taking, the Supreme Court has looked to whether the restriction "forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 83[] (1980), quoting from *Armstrong v. United States*, 364 U.S. 40, 49[] (1960).

*See Arthur E. Selnick Associates, Inc. v. Howard County Maryland*, 206 Md. App. 667, 700, 51 A.3d 76, 96 (2012).

In its Motion, Columbia argues that the inverse condemnation claim fails because Mangione "is bound here by the deeds of easement granted by its predecessor in interest giving Columbia a right of way on [the Property] for the Line MB pipeline." Mem. at 16.  Columbia also asserts that, "as recognized by the Court's August 2013 Order, Columbia has the right under Maryland law to repair, maintain, and improve its right of way as an easement holder[.]" Mem. at 17.

To be sure, Columbia was granted the right to make pipeline repairs pursuant to the August 2013 Order. Nevertheless, Columbia's argument in support of dismissal of the inverse condemnation claim otherwise implicate the merits of this case, which involve, among other issues, the proper interpretation of the relevant easements and the parties' rights in light of regulatory changes. At this stage, dismissal of the inverse condemnation claim on the grounds Columbia invokes would be premature, and as a result Count VII will not be dismissed.

F.  Attorneys' Fees

In connection with all seven counts raised in Mangione's Amended Counter-Complaint, it seeks, *inter alia*, an award of attorneys' fees. Columbia seeks the dismissal of Mangione's request for attorneys' fees, asserting that Mangione "has not alleged any circumstances where attorneys' fees are recoverable under Maryland law." Mem. at 17.

"'[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975) (citation omitted). In *Alyeska*, the Supreme Court stated that a forum state's "judicially created rule" as to attorneys' fees will be applied by a federal court sitting in diversity. *Id.* Both Maryland and the Fourth Circuit apply what is commonly referred to as the "American Rule." *See, e.g.*, *United Food & Comm. Workers, Local 400 v. Marvel Poultry Co.*, 876 F.2d 346, 350 (1989) ("Without . . . express contractual or statutory authorization, courts generally adhere to the American Rule which requires each party to bear its own litigation costs, including attorney's fees."); *see also Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006) ("Contract provisions providing for

awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland.").

Under the "American Rule," a "prevailing party is not awarded attorney's fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (quoting *Thomas v. Gladstone*, 386 Md. 693, 699, 874 A.2d 434, 437 (2005)).

According to Columbia, none of these exceptions apply here.   It observes that none of the written easements contain an attorneys' fee provision, and notes that Mangione has raised no statutory claims, much less one containing a fee-shifting provision.   Mem. at 17.   Further, Columbia says, Mangione has not alleged that it has been forced it "to engage in litigation against a third party," nor do its allegations suggest bad faith or "malicious prosecution" on the part of Columbia.   *See id.* at 17-18.

In the Opposition, Mangione offers little response regarding the issue of attorneys' fees. Instead, Mangione merely indicates that it is premature to address its claim for attorneys' fees, on the ground that its fee request "directly relates" to "a favorable final determination" as to Mangione's declaratory judgment claim.   *See* Opp. at 1.

Because Mangione has neither alleged in the Amended Counter-Complaint nor argued in the Opposition that any of the four recognized exceptions to the "American Rule" apply in this case, Columbia's motion to dismiss Mangione's claim for attorneys' fees will be granted.   *See,*

*e.g.*, *Baer v. GMAC Mortg., LLC*, 2013 WL 5945654, at *4 (D. Md. Nov. 5, 2013) (dismissing

claim for attorneys' fees where none of four exceptions were applicable).

### IV.  Conclusion

For the foregoing reasons, Columbia's Motion is granted in part and denied in part.  An

Order implementing this ruling follows.


Date: September 26, 2014                    _____/s/_____

                                            Ellen L. Hollander
                                            United States District Judge